**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01297

John Meggs, an Individual, and
Access 4 All, Inc., a Florida Not-for-Profit Corporation

    Plaintiffs,

  vs.

IA Lodging Denver Champa TRS, L.L.C., a Delaware Limited Liability Company,

    Defendants.

_____/

---

## COMPLAINT

### Introduction

  Plaintiffs, John Meggs, an individual, and Access 4 All, Inc., a Florida Not-for-Profit Corporation, ("Plaintiffs" or "Plaintiffs") on their behalf and on behalf of all other mobility-impaired individuals similarly-situated hereby sues IA Lodging Denver Champa TRS, L.L.C., a Delaware Limited Liability Company ("Defendant") for injunctive relief, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 _et seq._ ("ADA").

### The Parties

1. Individual plaintiff, John Meggs, is an individual over eighteen years of age and is otherwise sui juris.

2. Plaintiff organization, Access 4 All, Inc., is a Florida Not-for-Profit Corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation. This entity was formed under the laws of the State of Florida and remains in good standing.

3. Defendant, IA Lodging Denver Champa TRS, L.L.C., owns or operates a place of public

accommodation alleged by the Plaintiffs to be operating in violation of Title III of the ADA.

## Jurisdiction and Venue

4.      Defendants' property, also known as the Kimpton Monaco Hotel, is a hotel located at 1717

Champa Street, Denver, CO 80202, in the County of Denver ("Kimpton" or the "Property").

5.      Venue is properly located in the District of Colorado because venue lies in the judicial district

of the property situs.  The Defendant's property is located in and does business within this judicial

district.

6.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original

jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans

with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7.      The Defendant either owns, leases, leases to, or operates a place of public accommodation as

defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to

comply with the obligations of the ADA.[2]

8.      Plaintiff, John Meggs, is an individual with disabilities as defined by and pursuant to the

ADA.  Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord injury

and therefore has a physical impairment that substantially limits many of his major life activities[3]

including, but not limited to, not being able to walk or stand. Mr. Meggs, at all times, requires the

use of a wheelchair to ambulate.

9.      Mr. Meggs is a member of the Plaintiff organization, Access 4 All, Inc., which is comprised

of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is

to represent the interest of its members by ensuring that they are not discriminated against at places

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202

[2] 28 C.F.R. § 36.201(a) and 28 C.F.R. § 36.104

[3] as defined by 28 C.F.R. § 36.105(b)(1-2)

of public accommodation.

## Factual Background

10.     Mr. Meggs is a staunch advocate of the ADA. Since becoming aware of his rights, and their

repeated infringement, he has dedicated his life to this cause so that he – and others like him – may

have full and equal enjoyment of public accommodations without the fear of discrimination,

retaliation, or repeated exposure to architectural barriers which demean them and endanger their

safety.

11.     Mr. Meggs encounters architectural barriers at the majority of places that he visits. Seemingly

trivial architectural features such as doorways, sinks, elevator buttons, and  coffee machines are taken

for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous and

even dangerous for him and other wheelchair users.

12.     The barriers to access that Mr. Meggs experiences at differing places of public

accommodation are often very similar in nature. For example, he is repeatedly faced with improperly

designed restrooms, doorways which cannot be entered without assistance, and guestrooms that he

cannot make full use of (even when designated "accessible" or "handicapped"). He is angered and

disheartened by the repetitiveness of the complaints he is forced to make to employees and

management – and to no avail. Mr. Meggs has become fully aware that the only way to affect change

is through the ADA; just as Congress intended.

13.     Although a California resident, Mr. Meggs travels to Colorado several times per year, both

for pleasure – in the form of visiting friends and colleagues – and for business meetings pertaining

to Plaintiff association, Access 4 All, Inc.

14.     Mr. Meggs has visited the Kimpton on multiple occasions, his last visit as an overnight guest

occurred on or about August 28, 2022.  Mr. Meggs stayed at the Kimpton as an overnight guest and

bone fide purchaser; he sought to avail himself of the goods and services offered to the public within

but found that the Property was littered with violations of the ADA, both in architecture and in policy.

Mr. Meggs was guest in Room 416.

15.     Mr. Meggs subsequently visited the Property on or about November 15, 2022, but found that no change in architecture nor policy had been made.

16.     Mr. Meggs has a reservation to return to the Kimpton on August 21, 2023; he also intends to return on or about October 24, 2023, during a subsequent trip to the Denver area. He intends to revisit Kimpton not only as an overnight guest but also to monitor any progress made with to respect to ADA compliance – he sincerely hopes that his return visits are not made in vain.

17.     Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Kimpton.

18.     The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendants.

19.     Thus, Plaintiffs have a realistic, credible, existing, and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described, but not necessarily limited to the barriers he has personally experienced which are listed in paragraph 25 of this Complaint.

20.     Following any resolution of this matter Plaintiffs will ensure that the Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This re-inspection shall occur as set forth in the parties' settlement agreement or as ordered by this Court.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*

21.     Plaintiffs reallege and incorporate by reference all the allegations contained in all the

preceding paragraphs.

22.    The Defendants have discriminated against the Plaintiffs, and all other mobility impaired

individuals, by denying access to, and full and equal enjoyment of, the goods, services, facilities,

privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

23.    A preliminary inspection of the Property has shown that violations of the ADA exist.  That

inspection, performed by Plaintiffs' expert, further revealed that the remediation of all

violations/barriers listed in paragraph 24 are readily achievable and/or technically feasible.

24.    The following are architectural barriers and violations of the ADA that Mr. Meggs has

personally encountered during his visits to the Kimpton:

**Entrance Access and Paths of Travel**

   **a.**  There are several inaccessible street entrances at the Kimpton that lack directional signage to

   the nearest accessible entrance; a violation of the ADAAG and Section 404 of the 2010 ADA

   Standards. Mr. Meggs could not access Kimpton from these areas and had to be diligent in order

   to locate a purported accessible entrance. The remediation of these barriers is both technically

   feasible and readily achievable.



**b.** The Kimpton does not possess an accessible route from valet parking to the sidewalk/hotel entrance; in violation of the ADAAG Sections 4.3 and 4.8 and Sections 404, 405, and 406 of the 2010 ADA Standards.  Mr. Meggs could not exit his vehile at the valet parking area and travel directly to the Kimpton;, he was forced to travel around to an a curb cut and then the sidewalk which leads from the valet parking area to the lobby/facility entrances. The remediation of these barriers is both technically feasible and readily achievable.



**c.** Mr. Meggs could not enter the Kimpton, in some areas, without assistance due to the presence of inadequate maneuvering clearance, a lack of latch-side clearances, and abrupt changes of level and sloping at the base of doors; violations of ADAAG Section 4.13 and Section 404 of the 2010 ADA Standards. The remediation of these barriers is both technically feasible and readily achievable.





**Access to Goods and Services in Lobby/Common Areas**

    **d.**  Kimpton fails to make reasonable accommodations in policies, practices, and procedures to provide for the full and equal enjoyment of disabled individuals nor does it maintain the elements which are required to be accessible and usable by persons with disabilities as required by 28 CFR § 36.211. For example, a failure to remove debris and stored goods on counter tops and a failure to maintain maneuvering and approach clearance to accessible elements and paths of travel. These failures in policy prevented Mr. Meggs from freely traveling about the hotel and using the accessible elements; which include but are not limited to telephones, desks, tables, and other elements which are required to be accessible – at all times. This failure in policy is easily correctable and must be monitored into the future, as this type of discriminatory practice is recurring and continuing.

    **e.**  Mr. Meggs could not access hotel amenities (laundry area, phones, workspaces, coffee

station, gym, etc.) nor could he access counters workstations. These hotel amenities/features are mounted beyond his reach, counter heights are mounted beyond the allowable limits, doors lack maneuvering space and latch-side clearance, and the tables/workstations provided are not wheelchair accessible (as they lack the requisite knee and toe clearance), the paths of travel do not contain the required width for wheelchair travel, and the gym is not accessible; violations of the ADAAG and Sections 306, 308, 404, 902 and 1004 of the 2010 ADA Standards. These barriers have prevented Mr. Meggs from accessing these elements within the hotel; their remediation is both technically feasible and readily achievable.



  

  

  

 

**Lobby/Common Area Restrooms**

**f.**   The restrooms located within the lobby/common area are not ADA compliant; in violation of

the ADAAG and Section 601 of the 2010 ADA Standards. Mr. Meggs could not freely access

the elements within restroom without assistance. The remediation of these barriers is both

technically feasible and readily achievable.

**g.**   The lobby area restrooms contain lavatories which lack the requisite amount of knee and toe

clearance, a violation of the ADAAG and Section 306 of the 2010 ADA Standards. Mr. Meggs

was unable to make use of sinks and could not wash his hands. Further, Mr. Meggs could not

make full use of the mirror due to its mounting height. The remediation of these barriers is both

technically feasible and readily achievable.



**h.**   The lobby area restroom contains improper centerlines for the water closets and flush controls

which are mounted on the wall side, in violation of the ADAAG and Section 604 of the 2010

ADA Standards. Due to these barriers Mr. Meggs could not make use of the water closets without

assistance. The remediation of these barriers is both technically feasible and readily achievable.



**i.**    The lobby area restroom contains changing table mounted outside of Mr. Megg's reach – and the reach of all wheelchair users – in violation of the ADAAG and Section 308 of the 2010 Standards. Due to the improper location Mr. Meggs could not make use of amenities within the restrooms. The remediation of these barriers is both technically feasible and readily achievable.



**j.**    The doors used to access the aforementioned restrooms and the doors of the toilet stalls within are impeded by improper door hardware, improper signage, and/or a lack of latch-side clearance/wheelchair maneuvering clearance. Due to the lack of access Mr. Meggs could not make use of the door used to enter restroom without assistance, if at all. Mr. Meggs could not make use of the stall doors without assistance because they are not self-closing. The remediation

of these barriers is both technically feasible and readily achievable.



**Accessible Guestroom/Suite**

**k.** The guestroom (Room 416) contained elements that were inaccessible to Mr. Meggs. These

include the towel racks, closet/storage areas, the iron, drapery wands, and the door hardware;

violations of the ADAAG and Sections 225.2 and 806.2 of the 2010 ADA Standards. Mr. Meggs

was unable to freely make use of these amenities. The remediation of these barriers is both

technically feasible and readily achievable.





**l.**    The water closet within the guestroom restroom contains improperly mounted grab bars and improperly mounted dispensers; in violation of the ADAAG and Section 308 and 604 of the 2010 ADA Standards. Mr. Meggs could not use the restroom safely/comfortably without assistance. The remediation of these barriers is both technically feasible and readily achievable.





**m.**    The guestroom toilet lacks the requisite clear floor space needed to safely transfer; Mr. Meggs could not safely transfer from his wheelchair to the toilet. This is a violation of the ADAAG and Section 604 of the 2010 ADA Standards. The remediation of this barrier is both technically

feasible and readily achievable.



**n.** The restroom located within the designated accessible guestroom contained improperly designed roll-in shower (the shower is too small in length and width) with an improperly mounted spray unit and controls, improper grab bars, and improper seat; all in violation of the ADAAG and Sections 309, 607, 608, 609, and 610 of the 2010 ADA Standards. Mr. Meggs could not properly bathe due to improperly located shower controls, as they are mounted well beyond his reach, while the other violations hindered him from doing so comfortably - even with assistance. The remediation of these barriers is both technically feasible and readily achievable.





25.    Each of the foregoing violations is also a violation of the ADA Standards for Accessible

Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R part 36

("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter .2, and

Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act

Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at

36 C.F.R. § 1191, appendix B and D; and the 2010 Standards for Accessible Design ("2010 ADA

Standards"), as promulgated by the U.S. Department of Justice.[4]

26.    The discriminatory violations described in paragraph 24 may not be an exhaustive list of the

ADA violations that exist at the Kimpton, but they are the result of a preliminary inspection

conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs.  Plaintiffs

require a thorough inspection of the Defendants' place of public accommodation to photograph and

measure the architectural barriers which exist at the Property and violate the ADA.

27.    Plaintiffs, and all others similarly-situated, will continue to suffer discrimination, injury and

damage without the immediate relief provided for by the ADA and requested herein.

28.    Defendants have discriminated against Plaintiffs, and all mobility impaired individuals, by

denying them access to full and equal enjoyment of the goods, services, facilities, privileges,

advantages and/or accommodations of its place of public accommodation or commercial facility in

---

[4] 28 C.F.R. § 36.104

violation of the ADA.

29.     Defendants continue to discriminate against Plaintiffs, and all mobility impaired individuals, by failing to remove architectural barriers – and communication barriers that are structural in nature.[5]

30.     Defendants continue to discriminate against Plaintiffs, and all mobility impaired individuals, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[6]

31.     Defendants continue to discriminate against Plaintiffs, and all mobility impaired individuals, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[7]

32.     If the Defendants' facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[8] then the Defendants' facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

33.     Pursuant to 28 C.F.R. § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.  An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[9] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical

---

[5] 42 U.S.C. § 12181(b)(2)(A)(iv)

[6] 42 U.S.C. § 12181(b)(2)(A)(ii)

[7] 42 U.S.C. § 12181(b)(2)(A)(iii)

[8] as defined by 28 C.F.R. § 36.401(a)(2)

[9] 28 C.F.R. § 36.402(a)(2)

and scoping specification the Defendants must meet/exceed to bring the Property into compliance with the ADA.

34.     Pursuant to 28 C.F.R. § 36.304(a) Defendants shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

35.     28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

36.     Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

37.     Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

38.     Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

39.     Plaintiffs are not required to notify Defendants of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

40.     Plaintiffs are without adequate remedy at law and are suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendants, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

41.      Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendants.

42.      Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs injunctive relief, including an order to require the Defendants to alter the Kimpton and make the Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendants cure their violations of the ADA.[10]

**WHEREFORE,** Plaintiffs respectfully demand;

a.   The Court issue a Declaratory Judgment determining that the Defendants are in violation of Title III of the ADA.

b.   Injunctive relief against the Defendants including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendants to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.   An Order requiring the Defendants to cease their discriminatory practices and to maintain the requisite accessible features at the Property - as required by the ADA.

d.   An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e.   Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

---

[10] 42 U.S.C. § 12188(b)(2)

Respectfully submitted on this 23rd day of May 2023,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Direct (609) 319-5399
Office (609) 691-8565
Fax (609) 262-4651
js@shadingerlaw.com
*Attorney for Plaintiffs,*
*John Meggs & Access 4 All, Inc.*